## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

JUDEAN PRYOR,                              )
                                           )
            Plaintiff,                     )
                                           )        No. 2:21-cv-01047-DCN-JDA
      vs.                                  )
                                           )        **ORDER**
TRIDENT MEDICAL CENTER, LLC,               )
                                           )
            Defendant.                     )
_____)

        This matter is before the court on Magistrate Judge Jacquelyn D. Austin's report

and recommendation ("R&R"), ECF No. 34, that the court grant defendant Trident

Medical Center, LLC's ("Trident") motion for summary judgment, ECF No. 27.  For the

reasons set forth below, the court adopts the R&R and grants the motion.

### I.  BACKGROUND

        The R&R ably recites the facts of the case, and the parties do not object to the

R&R's recitation thereof.  Therefore, the court will only briefly summarize material facts

as they appear in the R&R for the purpose of aiding an understanding of the court's legal

analysis.

        Plaintiff Judean Pryor ("Pryor"), a black female, began working as a licensed

practical nurse at Trident's hospital in Summerville, South Carolina in 1994.  In 2012,

Pryor became the clinical coordinator of endoscopy and the ambulatory care center

("ACC") at the North Charleston campus.  In that role, Pryor was responsible for

manning the front desk, fielding patient calls, rotating nurses to prepare patients for

surgery, and scheduling patients to nurses and technicians.  If the hospital was short on

1

staff, Pryor would step in to do patient assessments, provide IVs, and escort the patients around.  ECF No. 31-1, Pryor Dep. at 20:9–14.

In addition to Pryor, Trident employed three supervisors in endoscopy and the ACC: supervisor of endoscopy David Harlan ("Harlan"), supervisor of preadmissions testing Teresa Wickenhoefer ("Wickenhoefer"), and supervisor of pre-op/post-op Kathy Dennis ("Dennis").  Harlan, Wickenhoefer, and Dennis are all white.  In February 2020, Trident hired Angela Sturgill ("Sturgill") as its director of perioperative, and Pryor began reporting to her.  Sturgill reported to vice-president of surgical services Deborah Moore ("Moore"), and Moore, in turn, reported to Chief Operating Officer Scott Weiskittel ("Weiskittel").  Sturgill, Moore, and Weiskittel are all white.  Pryor was the only black nurse leader at Trident's North Charleston campus.  ECF No. 28-1, Pryor Dep. at 64:2–4.

Pryor alleges that on at least two occasions, Sturgill made "negative comments" toward her.  Id. at 60:8–12.  On one occasion, Sturgill and Moore allegedly confronted Pryor at the nurse's station and told her that she "needed to get on board" with management, and if she could "not get on the bandwagon," then she would "probably need to be looking for another job."  Id. at 60:19–25.  On the same day, Sturgill allegedly raised her voice at Pryor and stated she "didn't know how to lead a unit" after one of the technicians failed to show up to work.  Id. at 61:8–14.  On other occasions, Pryor was allegedly told that she didn't know how to manage a unit, that Sturgill didn't understand how Pryor got her position, and that Sturgill "was going to be making changes on the unit because there was a lot of dead weight."  Id. at 61:25–62:3.

On May 20, 2020, Pryor sent an email to Vickie Cummings ("Cummings"), Trident's vice president of human resources, asking, "CAN YOU PLEASE SEE ME

ASAP NEED ADVICE ON QUESTIONABLE HOSTILE ENVIRONMENT IN WORKPLACE." ECF No. 28-7 (emphases in original). Cummings forwarded the email to Avis Shorters ("Shorters"), the business partner for the surgical services unit who oversaw those areas. Shorters spoke with Pryor, and during the conversation, Pryor shared her account that Sturgill and Moore had made negative comments toward her in front of others, that she was afraid she was being set up to lose her job, and that she was being discriminated against because of her race and age. Following the conversation, Shorters told Moore that human resources had received an email detailing concerns about an employee's responsibilities and about the environment of the unit. ECF No. 27-3, Shorters Dep. at 24:3–11. Shorters did not mention Pryor's name in that conversation.[1]

Around May 2020, Weiskittel, Moore, and Cummings began to meet to discuss how "[t]o align the department with supervisors." ECF No. 28-2, Moore Dep. 31:24–25. According to Moore, the prior management made the decision to move Pryor over to the ACC as a clinical coordinator of endoscopy even though the ACC already had three supervisor positions and even though Pryor's position involved clerical duties. After two to three weeks of meeting together, Moore and the others reached the decision to eliminate Pryor's position. Weiskittel, Moore, and Cummings ultimately met with Pryor on June 15, 2020 to notify her that her position was being eliminated. After the position was eliminated, Pryor's desk duties were assumed by another clerical employee, who is white, and Pryor's supervisory duties were assumed by Wickenhoefer.

---

[1] Pryor disputes this, but as discussed infra, there is no genuine dispute of material fact on the issue of whether Shorters mentioned Pryor's name to Moore.

On March 8, 2021, Pryor brought an action against Trident in the Charleston County Court of Common Pleas. ECF No. 1-1. April 9, 2021, Trident removed the action to this court. ECF No. 1. The complaint alleges (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"); (2) age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA"); (3) retaliation in violation of Title VII and the ADEA; (4) negligent supervision; and (5) defamation. Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and Local Civil Rules 73.02(B)(2)(g) (D.S.C.), all pretrial proceedings in this case were referred to Magistrate Judge Austin.

On January 1, 2022, Trident filed a motion for summary judgment. ECF No. 27. Pryor responded in opposition on January 18, 2022, ECF No. 28, and Trident replied on January 28, 2022, ECF No. 31. On July 18, 2022, Magistrate Judge Austin issued the R&R, recommending that the court grant the motion for summary judgment. ECF No. 34, R&R. On August 1, 2022, Pryor filed her objections to the R&R. ECF No. 35. Trident responded to Pryor's objections on August 22, 2022. ECF No. 38. Pryor did not file a reply, and the time to do so has now elapsed. As such, the matter is now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the Magistrate Judge carries no presumptive weight, and the

responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id. However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Labs., Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings. Id.

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

## III.  DISCUSSION

Trident moves for summary judgment in its favor on all of Pryor's claims. In her response to the motion for summary judgment, Pryor agreed to withdraw her causes of action for age discrimination and negligent supervision. ECF No. 28 at 2 n.1. Accordingly, the Magistrate Judge recommended that the court grant summary judgment in Trident's favor on those claims, and the court agrees to do the same.

The Magistrate Judge recommended that the court grant Trident's motion on all remaining claims as well, finding that with respect to those claims, Pryor failed to raise a genuine dispute of material fact as to one element or more. The court proceeds to analyze each claim in turn.

### A.  Race Discrimination

In her complaint, Pryor alleges that her supervisors, Sturgill and Moore, discriminated against her on the basis of her race. Specifically, Pryor alleges that her supervisors treated similarly-situated employees who were white more favorably and terminated her employment on the basis of her race.

6

Title VII prohibits employers from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment on the basis of that individual's race.  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may avoid summary judgment on a racial discrimination claim through two avenues of proof: (1) by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether race motivated the employer's adverse employment decision (also known as the mixed-motive framework), or (2) by relying on the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Tabor v. Freightliner of Cleveland, LLC, 388 F. App'x, 321, 322 (4th Cir. 2010) (citing Diamond, 416 F.3d at 318).

Pryor does not contend that her claims succeed under the mixed-motive framework, and she proceeds solely under the McDonnell Douglas burden-shifting framework.  See ECF No. 35 at 3 ("Plaintiff proceeds in this case under the McDonnell Douglas framework.").  Under the McDonnell Douglas burden-shifting framework, Pryor must first establish a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802; Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010) (citing Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 252–53 (1981)).  To establish a prima facie case of racial discrimination under Title VII, a plaintiff must show that: (1) she is a member of a protected class, (2) her job performance was satisfactory, (3) she suffered an adverse employment action, and (4) similarly situated employees outside her protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination.  Coleman v. Md. Ct. App., 626 F.3d 187, 190 (4th Cir. 2010).  If the plaintiff establishes a prima facie case, the burden shifts to the

defendant to provide a legitimate, nondiscriminatory reason for its conduct.  Id.  Finally, if the defendant meets this burden, the plaintiff must then prove that the defendant's proffered reasons "were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).  "At this point, the burden to demonstrate pretext merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination."  Burdine, 450 U.S. at 256.

The parties dispute whether Pryor has satisfied the fourth element of a prima facie case of discrimination.  The R&R found that Pryor failed to prove the fourth element because she failed to establish that similarly-situated non-black employees were treated better than she was.  The R&R went on to find that even if Pryor had established a prima facie case of discrimination, Pryor failed to show that Trident's proffered reason for terminating her was mere pretext for race discrimination.  The court considers each finding in turn.

### 1. Comparator Evidence

Pryor argued in her response to the motion for summary judgment that she satisfied the final element of a prima facie case "through comparator evidence and other circumstances giving rise to an inference of unlawful discrimination."  ECF No. 28 at 8. The R&R determined that the other supervisors in the ACC—Harlan, Wickenhoefer, and Dennis—were not valid comparators because each of those employees held exclusively supervisory roles.  Pryor, on the other hand, held "a hybrid position that included both

clerical and supervisory duties." R&R at 10 (citing ECF No. 28-2, Moore Dep. at 24:24–25:5 and ECF No. 28-4, Cummings Dep. at 20:9–14).

Pryor acknowledges that her position included clerical duties. ECF No. 28 at 9. But in her objections, Pryor disagrees with the weight that the R&R placed upon that fact, arguing that Harlan, Wickenhoefer, and Dennis's lack of additional clerical duties is irrelevant to the comparison. Pryor reiterates that all four employees were supervisors who worked in the ACC and endoscopy departments. Trident decided to eliminate only one position, and "[t]hat position was [Pryor]'s, the only black managerial employee." ECF No. 35 at 4. Despite Pryor's argument to the contrary, the court finds that the different position responsibilities are indeed relevant to the comparator analysis.

In determining whether a comparator is similarly situated, "courts consider whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." Spencer v. Va. State Univ., 919 F.3d 199, 207 (4th Cir. 2019) (internal quotation marks omitted), as amended (Mar. 26, 2019), cert. denied, 140 S. Ct. 381 (2019). To establish this element, "the plaintiff must provide evidence that the proposed comparators are not just similar in some respects, but similarly-situated in all respects." Id. (internal quotation marks and citation omitted, and emphases in original); see also Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019) ("[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating

9

circumstances that would distinguish their conduct or the employer's treatment of them for it."); Monk v. Potter, 723 F. Supp. 2d 860, 877 (E.D. Va. 2010) (citing Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008)) (explaining that employees who "do not have the same job title, or do not have the same responsibility level, are not similarly situated").

Here, Pryor did not share the same job title or job description and was not subject to the same standards. Additionally, she did not share the exact same responsibilities as her comparators. See Cummings Dep. at 20:5–8 (explaining that Pryor's "job duties were more covering the front office area" and did not entail "managing or supervising individuals"). The distinguishing factor—her clerical duties—takes on added significance given the evidence in the record indicates that her supervisory position—and not the other three—was deemed expendable because it was a hybrid role. See id. at 20:9–14 (Q. So why was that position eliminated? A. Because they were -- they already had two people that were managing and supervising staff and her position was more of a front office clerical type . . . ."). At bottom, Pryor takes issue with the R&R's decision to weigh the additional clerical duties more heavily than the similarities of the roles. But Pryor cannot reasonably dispute that she had different titles, performed different duties, and had different day-to-day functions. The Magistrate Judge properly relied on these distinguishing factors in finding that Pryor was not similarly situated in all relevant respects to Harlan, Wickenhoefer, and Dennis. Therefore, the court overrules Pryor's objections regarding the fourth element of her race discrimination claim.

## 2. Pretext

The Magistrate Judge found that not only did Pryor fail to establish a <u>prima facie</u> case of race discrimination, but that summary judgment is appropriate because Trident proffered a legitimate, nondiscriminatory reason for discharging Pryor, and she did not submit evidence showing that the reason is merely pretext for discrimination. Once Pryor establishes her <u>prima facie</u> case, the burden of production shifts to Trident to articulate a legitimate, non-discriminatory reason for the challenged employment action. <u>Merritt</u>, 601 F.3d at 294. If Trident carries this burden, Pryor must then prove by a preponderance of the evidence that the neutral reasons offered by the employer were a mere pretext for discrimination. <u>Id.</u> The court agrees with the Magistrate Judge that Trident satisfied its burden, while Pryor did not.

Trident stated in its motion for summary judgment that the elimination of Pryor's position was motivated by a desire to make each sub-unit more efficient, and Pryor's clinical coordinator position "had become more clerical in nature as opposed to truly managerial." ECF No. 27-1 at 9. As the Magistrate Judge noted, Trident produced evidence supporting these non-discriminatory reasons. <u>See, e.g.</u>, ECF No. 28-2, Moore Dep. at 31:23–32:4 (testifying that the termination of the position was done to "align the department with supervisors"); ECF No. 28-4, Cummings Dep. at 20:9–16 (explaining that "it was the position, not the individual" that drove the termination). The R&R also addressed Pryor's three arguments for why Trident's reasons were pretextual: (1) Trident failed to document the reorganization that led to the termination of her position, (2)

Trident failed to investigate Pryor's hostile work environment complaint, and (3) Trident eliminated Pryor's position shortly after her hostile work environment complaint.

Under the first argument, Pryor argued that Trident's failure to document the reorganization is evidence that its stated basis for the adverse action was pretextual. The R&R rejected the argument, explaining that by pointing to Trident's lack of documentation, Pryor failed to put forth any of its own affirmative evidence to disprove Trident's stated reasons for the termination. In her objections, Pryor claims that the R&R misconstrues her argument. According to Pryor, Trident's failure to document its alleged reasons for termination may be used to independently support a finding of pretext. But the cases cited by Pryor do not support her position. For example, Pryor cites Lloyd v. Georgia Gulf Corp., 961 F.2d 1190, 1195 (5th Cir. 1992), for the proposition that "when an employee's stated motivation for an adverse employment decision involves the employee's performance, but there is no supporting documentation, a jury can reasonably infer pretext." Another court previously considered a similar argument and rejected it. E.E.O.C. v. IPMC, Inc., 834 F. Supp. 200, 205–06 (E.D. Mich. 1993), vacated on other grounds, 156 F.R.D. 163 (E.D. Mich. 1994). The Eastern District of Michigan explained that "[a] close reading of Lloyd reveals . . . that the Fifth Circuit held that the lack of supporting documentation went to the issue of whether the purported reasons was false and not to the issue of whether it also was a pretext for discrimination." Id. at 205. The court further explained that to the extent that Lloyd supports the proposition that a jury may weigh a lack of supporting documentation, the lack of documentation would still only show that the proffered reason was "false," but not that the proffered reason was "a

pretext for discrimination." <u>Id.</u> at 206 (quoting <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 511 n.4 (1993)).

Similarly, courts have declined to follow another case cited by Pryor, <u>Cade v. Astrue</u>, 2014 WL 4635568 (D.S.C. Sept. 15, 2014). <u>See</u> <u>Brattain v. QHG of S.C., Inc.</u>, 2021 WL 3860651, at *6 (D.S.C. Aug. 30, 2021) (rejecting the proposition that a lack of documentation is evidence of pretext). In <u>Brattain</u>, the court declined to find <u>Cade</u> analogous because <u>Cade</u> did not involve a reduction in force, or layoff, situation. <u>Id.</u> Because "[c]onsideration of employees' relative performance and value to the company are within the employer's purview, not the court's," the court ultimately determined that the defendant had proffered legitimate, nondiscriminatory reasons for the plaintiff's discharge. <u>Id.</u> The court adopts the same reasoning here. The elimination of Pryor's position was, by multiple accounts, a business decision, and the court "is not in the business of micro-managing these details," particularly where Pryor has failed to provide any other indication that the decision was not just wrongful, but also motivated by discrimination. <u>Id.</u>

Next, the Magistrate Judge explained that Pryor's second and third pretext arguments—failure to investigate and temporal proximity to Pryor's workplace complaint—are more relevant to Pryor's hostile work environment claim. Pryor objects, repeating arguments from her response to the motion for summary judgment that failure to investigate and suspect timing may support a finding of pretext. But Pryor's own cases support the R&R's conclusion that a failure to investigate primarily weighs on the issue of retaliation. <u>See</u> <u>Ion v. Chevron</u>, 731 F.3d 379, 394–95 (5th Cir. 2013) (cited at ECF No. 35 at 6) ("[The Defendant]'s failure to conduct even the most cursory

investigation . . . creates a fact issue as to whether it would have terminated [the plaintiff] despite its <u>retaliatory motive</u>.") (emphasis added).  Pryor does not raise any new arguments that the R&R did not consider, and the court overrules Pryor's objections.

In sum, the court agrees with the Magistrate Judge that Pryor cannot succeed on her discrimination claim because she cannot show a <u>prima facie</u> case of discrimination under the <u>McDonnell Douglas</u> burden-shifting framework.  The court therefore adopts the R&R's recommendation and grants summary judgment on the Title VII discrimination claim in Trident's favor.

### B. Hostile Work Environment

A Title VII hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted).  To prevail under a hostile work environment claim, "a plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's sex [and/or race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'"  <u>Mosby-Grant v. City of Hagerstown</u>, 630 F.3d 326, 334 (4th Cir. 2010) (quoting <u>Conner v. Schrader-Bridgeport Int'l, Inc.</u>, 227 F.3d 179, 192 (4th Cir. 2000)) (alteration in original).  The first prong is subjective while the remaining prongs are "made up of objective components based on a 'reasonable person' standard."  <u>Pueschel v. Peters</u>, 577 F.3d 558, 565 (4th Cir. 2009) (citing <u>Harris</u>, 510 U.S. at 21).

14

Under the second prong, the plaintiff must establish that the unwelcome workplace conduct was a direct result of her sex, disability, or race. Id. To establish that the alleged harassment was sufficiently severe or pervasive under the third prong, the plaintiff "must show that a reasonable jury could find that the . . . harassment was so severe or pervasive as to alter the conditions of her employment and create an abusive or hostile atmosphere." Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019) (citing E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009)). "The severe or pervasive element has both a subjective and objective component." Id. "[The] plaintiff must show that [she] did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." Id.

The R&R determined that Pryor failed to establish a race-based hostile work environment as a matter of law. In her objections, Pryor reiterates her contention that her hostile work environment claim consists of allegations that she was regularly threatened with termination; that she was yelled at in front of others for not knowing how to lead; that she was called "dead weight, "old," and "stagnant," ECF No. 35 at 9; and that Pryor's supervisors told her subordinates that they did not have to follow Pryor's instructions. As the Magistrate Judge noted, however, complaints of rude treatment, callous behavior, or conflict based on a difference of opinion are—without more—generally not actionable under Title VII. R&R at 15 (citing E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315–16 (4th Cir. 2008)).

Additionally, the R&R found that Pryor failed to present any evidence that the allegedly hostile work environment was based on her race and that her race was the "but for" cause of her purported harassment. The incidents that Pryor discusses in her

15

objections are evidence of unwelcome conduct, but those incidents fail to correct the deficient elements identified by the R&R. As such, the R&R correctly found that the unwelcome conduct was not directly related to Pryor's race and that summary judgment was warranted in Trident's favor on Pryor's hostile work environment claim.

### C. Title VII Retaliation

In her complaint, Pryor alleges retaliation under Title VII based on the termination of her position following her email to Cummings about a "questionable hostile environment" and her ensuing conversation with Shorters.

Title VII forbids an employer from taking action that discriminates against an employee because that employee either has "opposed any practice made an unlawful employment practice" by Title VII or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). The purpose of this anti-retaliation provision is to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 63 (2006). Like under a discrimination claim, employees may prove that their employer retaliated against them for engaging in a protected activity either through direct evidence of retaliatory animus or under the McDonnell Douglas burden-shifting framework. Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015).

Like before, Pryor advances her claim under the McDonnell Douglas burden-shifting framework. ECF No. 28 at 15. To prevail under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of retaliation. Roberts v.

16

Glenn Indus. Grp., Inc., 998 F.3d 111, 122 (4th Cir. 2021).  After a prima facie case is
made, the burden shifts to the employer to show that it took adverse action for a
legitimate, non-retaliatory reason.  Id.  If the employer makes this showing, the burden
shifts back to the plaintiff to rebut the employer's evidence by demonstrating the
employer's purported non-retaliatory reasons were merely pretext for retaliation.  Id.;
Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148 (2000).

    The elements of a prima facie Title VII retaliation case are (1) engagement in a
protected activity; (2) adverse action against the plaintiff; and (3) a causal link between
the protected activity and the adverse action.  Coleman, 626 F.3d at 190.  In the
retaliation context, an adverse action is one that "well might have dissuaded a reasonable
worker" from engaging in protected conduct.  Burlington N., 548 U.S. at 68 (internal
quotation marks and citation omitted); see Ray v. Int'l Paper Co., 909 F.3d 661, 670 (4th
Cir. 2018) ("[A]lthough an adverse action need not affect the terms and conditions of
employment, there must be some direct or indirect impact on an individual's employment
as opposed to harms immaterially related to it.") (internal quotation marks and citation
omitted).

    In her response to the motion for summary judgment, Pryor argued that she had
shown a causal link between her protected activity and the adverse action under the third
element of her prima facie claim.  ECF No. 28 at 16.  On the other hand, the R&R found
that Pryor failed to establish causation for purposes of proving pretext.  R&R at 19.
Upon review, the court finds that the parties and the Magistrate Judge were focused on
the same core inquiry: whether Pryor established a causal connection between the
allegedly adverse acts and her protected activities.  Both interpretations are valid.

Compare Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir. 1998) ("To satisfy the third element, the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity.  Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."), with Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st Cir. 2006) ("In assessing pretext, a court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible.").  The Magistrate Judge concluded that there was no evidence in the record that the decisionmakers responsible for Pryor's termination had any knowledge of her protected activity.  Regardless of whether the issue goes to the third element of a prima facie Title VII retaliation claim or to pretext, the court agrees that there is no factual dispute that the decisionmakers did not have knowledge of Pryor's protected activity.

It is undisputed that Moore, Weiskittel, and Cummings were each at least partially responsible for the termination of Pryor's position.  R&R at 18 n.11; ECF No. 35 at 10.  It is further undisputed that there is no evidence in the record that Weiskittel was aware of Pryor's complaint.  Although the R&R acknowledged that there was some evidence that Cummings was involved in discussions about eliminating Pryor's position, the R&R relied on the evidence that the initial suggestion to eliminate the position originated with Moore.  See R&R at 20.  The R&R then determined that Moore, as the primary decisionmaker, did not know that Pryor had complained about a hostile work environment.

In her objections, Pryor contends that Cummings was in fact a decisionmaker because Cummings met with Moore and Weiskittel "two to three times to discuss the elimination of the Clinical Coordinator position." ECF No. 35 at 10 (citing ECF No. 27-1 at 9). Pryor quotes Trident's brief for that proposition, but Trident stated that Moore and Weiskittel met with Cummings "[b]efore <u>finalizing</u> their decision." ECF No. 27-1 at 9 (emphasis added). In any event, Moore's deposition excerpts, cited by Trident in that portion, reveal nothing that contradicts Cummings's account that the decision originated with Moore. <u>See</u> ECF No. 27-4, Moore Dep. at 32:21–33:17 (explaining that Moore met with Weiskittel and Cummings to discuss eliminating the clinical coordinator position).

Pryor also disputes that Moore did not know about Pryor's complaint. But as the R&R noted, Moore clearly indicated during her deposition that she had no knowledge of Pryor's complaint. ECF No. 27-4, Moore Dep. at 9–12 ("Q: Okay. Were you aware that Ms. Pryor reached out to Ms. Cummings about a hostile environment in the workplace? A: No."). To rebut that testimony, Pryor argues that the following excerpt taken from Shorters's deposition reveals that Moore knew about the complaint, contrary to her testimony:

> Q.    Okay. What do you recall sharing with Ms. Moore?
>
> A.    I shared with Ms. Moore that we received an email, Vickie Cummings received an email, forwarded to me and asked me to meet with Judean Pryor in regards to how those concerns that were brought to our attention. I shared with Deb Moore some concerns had been brought to our attention about an employee and the responsibilities of her -- of her on the unit in the environment. "Have these concerns been brought to your attention?"

ECF No. 28-8, Shorters Dep. at 24:2–11.

Pryor claims that Shorters contradicts herself "later" by stating that she did not mention Pryor's name to Moore. ECF No. 35 at 11. Pryor omits the fact that the testimony she refers to was elicited immediately after the testimony above:

> Q.    You asked her that?
>
> A.    Yes.
>
> Q.    Okay. Did you tell her who had brought those concerns? Did you mention Ms. Pryor's name in that conversation?
>
> A.    No.

Shorters Dep. at 24:12–17. This testimony is therefore best read as a clarification of Shorters's answer from just before. Shorters indicated that Cummings had asked her to speak to Pryor, and it was unclear whether Shorters mentioned that fact to Moore along with the fact that concerns had been brought about "an employee." Id. at 24:3–11. But the question and response immediately below makes clear that Shorters never mentioned Pryor's name. Id. at 24:14–17. Shorters's testimony, when read with Moore's equally clear testimony, leaves no doubt as to the conclusion that Moore had no knowledge that Pryor complained about a hostile work environment or that Cummings and Shorters were in the process of reaching out to her about the same. No reasonable juror could find that Moore's subjective knowledge is in dispute based on that testimony, and Pryor presents no other independent evidence suggesting such knowledge. For purposes of the third element, this means that Pryor has not shown that the decisionmaker, Moore, took the adverse employment action against Pryor because of her protected activity. For purposes of pretext, Pryor has not shown that Moore did not believe that her stated reason for the termination was credible.

In summary, there is no genuine dispute of material fact that Moore was the decisionmaker regarding the reason given for the termination of Pryor's position.  And there is no genuine dispute that Moore was not aware of Pryor's protected activity.  As such, the court agrees with the Magistrate Judge that Pryor cannot sustain a retaliation claim based on the termination of her position, either because Pryor cannot succeed under the third element of her prima facie case or because Pryor has not carried her ensuing burden of showing that the stated reason for termination was pretextual.

### D.  State Defamation Claim

Finally, the Magistrate Judge recommended that the court remand Pryor's state defamation claims if the court adopts the R&R's findings on Pryor's Title VII discrimination, hostile work environment, and retaliation claims.  Although Pryor objected to the Magistrate Judge's recommendations on her federal law claims, Pryor states that "[i]f the Court were to agree with the R&R, [Pryor] respectfully requests the Court adopt the R&R's recommendation to decline to exercise jurisdiction over [Pryor's] state law claim for defamation and remand that claim to state court."  ECF No. 35 at 11.

A district court has discretion to dismiss remaining state claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Where a case was removed to federal court on the basis of a federal claim that has been dismissed, a district court has discretion to remand the remaining state claims back to state court.  Farlow v. Wachovia Bank of N.C, N.A., 259 F.3d 309, 316 (4th Cir. 2001).  "Courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."  Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).  "Among the factors that inform this discretionary

21

determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Id. (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  Since the court dismisses Pryor's federal claims, the court finds that Pryor's request in light of that decision weighs in favor of remand.  In the absence of any objection from Trident, Pryor's remaining claim for defamation is remanded to the state court where this action originated.

## IV.   CONCLUSION

For the foregoing reasons, the court **ADOPTS** the R&R, **GRANTS** the motion for summary judgment, and **REMANDS** Pryor's defamation claim to state court in accordance with this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 28, 2022**
**Charleston, South Carolina**